IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE LYONS, | |
| Plaintiff, | Civil No. 06-2875-NLH-JS |
| v. | |
| NEW JERSEY DEPARTMENT OF TRANSPORTATION, et al., | |
| Defendants. | OPINION |

**APPEARANCES:**

JANE LYONS
RR#1 BOX 714
154 FOLWELL STATION ROAD
JOBSTOWN, NJ 08041
    *Pro Se Plaintiff*

DEBRA M. MCGARVEY
STATE OF NEW JERSEY
DEPARTMENT OF LAW & PUBLIC SAFETY
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625
    *Attorney for Defendants*

JOSEPH M. MICHELETTI
OFFICE OF THE NJ ATTORNEY GENERAL
P.O. BOX 112
TRENTON, NJ 08625
    *Attorney for Defendants*

**HILLMAN**, District Judge

     This matter comes before the Court on the motion of

Defendants New Jersey Department of Transportation ("State

Defendant"), David Sichik, Michael Seigfried, Charles Young,

Jeffrey Palmer, Joseph Sacco, Ronald Maruca, Arthur Marchione,

Vince Baglivo, Albert Malatesta, Paul Hoffman and William

Mullowney ("Individual Defendants") for Summary Judgment on all remaining claims of Plaintiff's Complaint.  Plaintiff's Complaint, filed *pro se*, alleges discrimination on the basis of race and gender by her employer and a number of supervisors. Although Plaintiff requested at least three extensions of time, she did not file an opposition brief to Defendants' Motion.  For the reasons expressed below, Defendants' Motion will be granted.

## I. Background[1]

Plaintiff, Jane Lyons, an African American female, began working with Defendant New Jersey Department of Transportation ("NJDOT") in 1979 as an Engineering Aide One.  In 1983, Plaintiff was promoted to Assistant Engineer and, in 1988, to the position

---

[1] Although typically in considering a summary judgment motion the Court sets forth the uncontested facts as articulated by all parties, or notes those material facts in dispute, in this case the Court has described the background facts as contained in Plaintiff's complaint and deposition testimony.  This is because instead of providing a recitation of their own facts, which the Court would treat as uncontroverted because of Plaintiff's failure to oppose Defendants' motion, see Brandon v. Warden, No. State Prison, 2006 WL 1128721, *3 (D.N.J. 2006) (treating all facts properly supported by the movant to be uncontroverted if a summary judgment motion is unopposed), Defendants have chosen to essentially restate Plaintiff's allegations and testimony for the purposes of demonstrating that Plaintiff has failed to provide sufficient evidence to support her claims, or to show that even if her claims were true, Defendants are entitled to judgment as a matter of law.  Thus, because there are no additional facts offered by Defendants, the Court will determine whether it is appropriate to grant Defendants' motion in the context of Plaintiff's allegations and testimony.  See Fed. R. Civ. P. 56(e) (providing that where a nonmoving party fails to oppose the motion, a court may only grant the moving party's motion for summary judgment "if appropriate").

of Senior Engineer.  Plaintiff's title is currently Senior
Engineer/Transportation.  Plaintiff filed her Complaint with this
Court on June 23, 2006, alleging, among other claims, racial and
gender discrimination, hostile work environment and retaliation.

Starting in 1983 with Plaintiff's transfer from materials to
construction, and continuing over the course of her employment,
Plaintiff alleges that she was subjected to numerous incidents of
discriminatory and retaliatory conduct.  The first specific
incident occurred in 1983 when Plaintiff contends that she was
on a list to be fired.  A family friend, however, intervened and
Plaintiff was not terminated.  Plaintiff alleges that in 1983 she
should have been transferred to a construction site closer to her
home.  In 1987, Plaintiff states that the son of the president of
a contractor working for NJDOT touched her backside.  After
informing her supervisor of the incident, the two met with the
president, but Plaintiff never received a formal apology.
Between 1987 and 1990, Plaintiff's supervisor assigned her to
work in the office to assist the secretaries.

Around 1991, Plaintiff alleges that a contractor's employees
directed discriminatory remarks towards her.  Subsequently, with
the support of NJDOT's management, she filed an internal
complaint with NJDOT and the Equal Employment Opportunity
Commission ("EEOC").  In 1995, Plaintiff sent letters regarding
another contractor's discriminatory remarks to the Deputy

3

Attorney General.  Later that year, a supervisor on a new project, Project 55, allegedly told Plaintiff that she was going to be sent to a disciplinarian.  In 1996, Plaintiff expressed her displeasure with Project 55, specifically complaining about the long commute and the contractor's constant verbal harassment. These situations allegedly caused Plaintiff to take sick leave due to increased blood pressure.  While on sick leave, Plaintiff contends that she was called unnecessarily at odd hours of the night by NJDOT's management and human resources department.

When Plaintiff returned from leave, she alleges that Defendant Joseph Sacco told her that he was having trouble finding a project for her because no one wanted to work with her. Plaintiff further alleges that Sacco assigned her demeaning work and did not support her when contractors harassed her.  In 1998, Plaintiff was assigned to a new project and alleges that the contractor's foreman subjected her to racial slurs.  Plaintiff alleges that she was removed from the project later that year because she wanted to file a complaint against the contractor.

Plaintiff further alleges that in 1998 she was subjected to a hostile work environment when she was investigated for, among other things, using her work phone for personal phone calls. Sometime prior to 2000, Plaintiff complained of differential treatment because, in her mind, she deserved to be promoted to Resident Engineer on a project when the previous Resident

4

Engineer retired.  In 1999, while on a new project under Defendant Vince Baglivo, Plaintiff was given limited responsibility and told by Baglivo that he did not want her on the project.  While on this project, Plaintiff alleges that a consultant working on the job cursed at her and told her that Baglivo informed him that he was not required to listen to her instructions.  Later that year, Plaintiff alleges that she was not considered for five position openings, but should have been.

While on a new project in 2000, Plaintiff filed a workplace violence complaint against the project's contractor.  Instead of defaulting the contractor, NJDOT made Baglivo the Resident Engineer and Plaintiff was required to now report to Baglivo. Also in 2000, Plaintiff was charged with misconduct and disciplined in 2001.  In 2001, Plaintiff was removed from her project and assigned to office work, a transfer she alleges was discriminatory.

For approximately a three month period in 2000, Plaintiff alleges that Defendant Ronald Maruca, her supervisor, wrote her harassing letters threatening discipline.  Later in 2000, Plaintiff contends that Defendant Arthur Marchione revealed to a contractor that she was returning from disciplinary leave and he was trying to set her up for further discipline.  Plaintiff also claims the Marchione had previously harassed her in the 1990s.

Additionally, Plaintiff alleges that Defendant Albert Malatesta, sometime between 2000 and 2001, failed to resolve a dispute between Plaintiff and another contractor.

Plaintiff alleges that Defendant, Paul Hofmann, harassed her between 2000 to 2001 by yelling at her while discussing a project, opposing her workman's compensation claim in 2000 and filing a Sick Leave Injury complaint.  Plaintiff alleges that, in 2002, Defendant David Sichik, NJDOT's Regional Director of Construction, harassed her during a phone interview.  She also holds him liable for any discriminatory acts of his subordinates because he reviewed all complaints she filed.  Prior to Sichik, Defendant Siegfried held the Regional Director position and reviewed Plaintiff's complaints.  Additionally, Plaintiff alleges that Defendant Charles Young, sometime prior to 2002, failed to investigate Plaintiff's harassment complaints regarding managers that he supervised.

On March 23, 2005, Plaintiff filed a Charge of Discrimination with the EEOC, alleging that she was discriminated on the basis of race and sex, and that Defendants retaliated against her for having filed prior complaints with the Department of Transportation, New Jersey Division of Civil Rights and the EEOC.  Specifically, Plaintiff claimed that on or about July 1, 2004, she was involuntarily reassigned to a position that required her to work with the individuals about whom she

6

previously complained.

In 2005, Plaintiff alleges that Defendant Jeff Palmer did not support her after she informed him about a disagreement with a contractor who allegedly grabbed her.  Additionally, in 2006, Plaintiff alleges that although Palmer authorized an office relocation when advised Plaintiff's desk had a racial epithet etched on it, he took a month to effectuate the relocation.  In her deposition testimony, however, Plaintiff states that she took a leave of absence for a month after she discovered the etched racial slur and upon her return in a month, she received a new desk.  Plaintiff, still unhappy, complained that she wanted an office relocation and went home.  Upon arrival the next day, Plaintiff discovered her office location changed.  Plaintiff then complained about her new location.  Plaintiff also alleges that Defendant Bill Mullowney, her supervisor in 2005, failed to support her when the president of a contractor grabbed her on the shoulder.

On April 18, 2006, the EEOC issued Plaintiff her "right to sue letter," and on June 23, 2006 Plaintiff filed her Complaint with this Court alleging, among other claims, racial and gender discrimination, hostile work environment and retaliation.  On April 30, 2008, Defendants filed a Motion to Dismiss, asserting that Plaintiff's claims were barred by the doctrine of sovereign immunity.  In its Opinion, dated November 12, 2008, the Court

granted Defendants' motion in part and denied it in part. Specifically, the Court dismissed all counts except Count II against DOT, as well as all counts except Count II as to the individual Defendant's in their official capacities for damages. Accordingly, the only regaining claims in this case are Count II (against all Defendants), Counts III through VIII against the Individual Defendant's in their personal capacity, and official capacity for prospective injunctive relief.

## II. Discussion

### A. Jurisdiction

Plaintiff alleges that Defendants violated Title VII, the First Amendment, the Fifth Amendment, the Fourteenth Amendment, 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 42 U.S.C. § 1986. Thus, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The Court exercises supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

### B.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.

8

P. 56.

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has
met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine
issue for trial.  Id.  Thus, to withstand a properly supported
motion for summary judgment, the nonmoving party must identify
specific facts and affirmative evidence that contradict those
offered by the moving party.  Anderson, 477 U.S. at 256-57.  A
party opposing summary judgment cannot merely rest upon
allegations, general denials or vague statements.  Saldana v.

9

Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

In circumstances where a nonmoving party fails to oppose the motion, Fed. R. Civ. P. 56(e) provides that the court may only grant the moving party's motion for summary judgment "if appropriate." A moving party's motion is appropriately granted when that party is entitled to judgment as a matter of law, and the court "will accept as true all material facts set forth by the moving party with appropriate record support." See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

**B. Plaintiff's Title VII Claim**

Count II of Plaintiff's Complaint alleges that Defendants discriminated against Plaintiff on the basis of race and gender and maintained a hostile work environment. Defendants argue that Plaintiff's discrimination claims are time barred and they are entitled to judgment as a matter of law.

An individual cannot bring a Title VII claim in court without initially filing a Charge of Discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Filing a charge after the 300-day limit describing a discrete discriminatory act is time barred. Nat'l Ry. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). The Supreme Court opined that "strict adherence to the [legislature's] procedural requirements" is the "best

10

guarantee of evenhanded administration of the law." Id. at 108.

A discrete discriminatory act may include "termination, failure to promote, denial of transfer, or refusal to hire;" such acts are time barred "even when they are related to acts" timely filed. Id. at 113-14.  "Each [discrete] incident of discrimination and each retaliatory adverse employment decision constitutes a separate" discriminatory act. Id. at 114.  However, these prior acts may be used as evidence "in support of a timely claim." Id. at 113.

A plaintiff alleging a "continuing-violation," however, does not need to file a complaint with the EEOC within 300 days of the discriminatory act. Fusco v. Bucks County, No. 08-2082, 2009 WL 4911938, at *7 (E.D. Pa. Dec. 21, 2009). Under this doctrine, "a plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate the act is part of an ongoing practice or pattern of discrimination of the defendant." Rush v. Scott Specialty Gases, 113 F.3d 476, 481 (3d Cir. 1997) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).  A plaintiff must first establish that "at least one discriminatory act occurred within the filing period" and second, that "the harassment was more than isolated, sporadic acts of intentional discrimination."  Id.  The plaintiff bears the burden of demonstrating that the continuing violation doctrine applies. West, 45 F.3d at 754-55.

11

On March 23, 2005, Plaintiff filed her Charge of
Discrimination with the EEOC alleging discrimination on the basis
of her race and gender, and that Defendants retaliated against
her for filing complaints with Department of Transportation, New
Jersey Division of Civil Rights and the EEOC.[2]  Specifically,
Plaintiff claimed that on or about July 1, 2004, she was
involuntarily reassigned to a position which required her to work
with the individuals about whom she previously complained.
According to Plaintiff's EEOC Complaint, she was the only
African-American female engineer involuntarily reassigned and she
was told that no one wanted to work with her because of her prior
complaints.  On April 18, 2006, the EEOC issued Plaintiff her
"right to sue letter," and on June 23, 2006, Plaintiff filed the
instant Complaint.

Plaintiff's principle allegation of discrimination in her
Complaint is her 2004 involuntary transfer.  During Plaintiff's
deposition, however, she admitted that her office reassignment
occurred in 2002, not 2004.  See Doc. 85-6 ("I had been in the
office since 2002.  Just remember that part.  Okay.  I didn't
just start - I didn't just start in the office July 1, 2004.  I
had been in there, off and on, since 2002.  I went out in the
field, came back in the office").  A transfer is a discrete act,

_____

[2] Plaintiff has not presented to this Court any record of
prior complaints to the New Jersey Department of Transportation,
New Jersey Division of Civil Rights or the EEOC.

and Plaintiff was thus required to file a charge with the EEOC within 300 days of that transfer.  Morgan, 536 U.S. 113-14 (noting that each incident of discrimination and each retaliatory act, such as failure to promote or denial of transfer, are considered separate discriminatory acts and time-barred under Title VII's 300-day limitation).  Plaintiff's own testimony reveals that the alleged retaliatory transfer occurred in 2002, and she did not file her charge with the EEOC regarding this act until March 23, 2005, which is well beyond the 300 day filing deadline.[3]  Therefore, Plaintiff's claim with regard to her transfer is time-barred.

With regard to the remainder of Plaintiff's allegations of discrimination, all of those alleged acts, as recited by the Court above, also occurred outside of the 300-day EEOC filing deadline.[4]  Thus, because all of Plaintiff's Title VII claims are

_____

[3] Plaintiff does not indicate in her Complaint or any subsequent filings with this Court any rationale for tolling the limitations period, nor does tolling appear appropriate.

[4] Plaintiff relates one isolated incident that allegedly occurred more contemporaneous with her March 23, 2005 EEOC filing.  Plaintiff alleges that in May 2006, Defendant Palmer took a month to effectuate Plaintiff's office relocation, even though he was aware that someone etched a racial epithet on her desk.  Plaintiff, however, has provided no documentation that this incident was ever reported to the EEOC.  Because the EEOC never reviewed the incident, and the EEOC did not issue Plaintiff's right-to-sue letter as to this allegation, this Court cannot consider whether a violation of Title VII occurred.  Furthermore, even if this Court were to consider the claim, Defendants' actions do not amount to a Title VII violation.  See Morgan, 536 U.S. at 113 ("As we pointed out in Meritor [Savings

time-barred, summary judgment must be entered in favor of
Defendants.[5]

### C. Plaintiff's 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 claims

Count V of Plaintiff's Complaint alleges that the Individual
Defendants violated 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 42
U.S.C. § 1986.  The Individual Defendants argue that Plaintiff's
claims are not only time-barred, but also fail to establish a
*prima facie* case of discrimination.

### 1. Plaintiff's Claims against Individual Defendants Sichik, Seigfried, Young, Sacco, Maruca, Marchiono, Baglivo, Malatesta, and Hoffman are time barred.

With regard to 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 42
U.S.C. § 1986 claims, state law for personal injury torts govern
the applicable statute of limitations period, Wallace v. Kato,
549 U.S. 384, 387 (2007), and in New Jersey, the statute of
limitations is two years, Cito v. Bridgewater Twp. Police Dep't,

_____

Bank, FSB v. Vinson, 477 U.S. 57,(1986)] 'mere utterance of an
... epithet which engenders offensive feelings in a[n] employee,'
does not sufficiently affect the conditions of employment to
implicate Title VII") (other citations omitted).

[5] Even if this Court considered Plaintiff's claims as
timely, her Title VII claim would still be dismissed because she
did not establish a *prima facie* case of a hostile work
environment.  Furthermore, with respect to the Individual
Defendants, Plaintiff's Title VII claim would be dismissed
because the Third Circuit precludes individual liability under
Title VII. Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d
1061, 1077 (3d Cir. 1996).

892 F.2d 23, 25 (3d Cir. 1989); N.J.S.A. 2A:14-2.

Plaintiff filed her Complaint with this Court on June 23, 2006. A review of the record indicates that Plaintiff did not work with the Individual Defendants Sichik, Seigfried, Young, Sacco, Maruca, Marchiono, Baglivo, Malatesta, and Hoffman for at least two years prior to the commencement of this action. Because Plaintiff has not submitted evidence to the contrary, her claims against these defendants are time-barred, and summary judgment shall be entered in their favor.

### 2. 42 U.S.C. § 1983 Claims

Plaintiff alleges that the Individual Defendants violated § 1983 by, among other things, failing to train their subordinates and officers, failing to supervise/control subordinates with a history of disparate treatment and misbehavior, failing to correct the discriminatory practice of management subordinates, and by implicitly and expressly teaching and encouraging a policy of decision making and disparate treatment on the basis of race in violation of Plaintiff's equal protection. As discussed, Plaintiff's § 1983 claim is time-barred as to the Individual Defendants Sichik, Seigfried, Young, Sacco, Maruca, Marchiono, Baglivo, Malatesta and Hoffman. The Court thus considers Plaintiff's § 1983 claim as to Defendants Palmer and Mullowney.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the conduct complained of was committed by a

person acting under color of state law; and (2) that the conduct deprived a plaintiff of her rights, privileges or immunities secured by the Constitution or laws of the United States.  See, e.g., Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005)(citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.1995); citing Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993)).

Plaintiff's § 1983 claim specifically alleges a violation of equal protection and due process, which the Court will construe as both a substantive and procedural process violation.  With regard to any due process violation by Palmer and Mullowney, there is no allegation or evidence to support that they denied Plaintiff a property right or did not provide her with proper procedures.  See Albright v. Oliver, 510 U.S. 266, 272 (1994) (explaining that substantive due process protection has "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity"); Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1293 (3d Cir. 1993) (explaining that to support a procedural due process claim, a plaintiff must demonstrate (1) that he had a legally protected property interest, and (2) that the state deprived him of that interest without due process of law).  Further, any conduct that could possibly be construed as a due process violation occurred outside the two year statute of limitations period.  See McGovern

16

v. City of Phila., 554 F.3d 114, 115 n. 2 (3d Cir. 2009).

As to Plaintiff's equal protection claim, to establish an
equal protection claim under § 1983, a plaintiff must prove
purposeful discrimination and must demonstrate that they "receive
different treatment from that received by other individuals
similarly situated." Andrews v. City of Philadelphia, 895 F.2d
1469, 1478 (3d Cir. 1990)(quoting Kuhar v. Greensburg-Salem Sch.
Dist., 616 F.2d 676, 677 n. 1 (3d Cir. 1990)).  When a plaintiff
alleges racial or gender discrimination, she must additionally
demonstrate that the disparate treatment was based upon her
gender or race.  To prove gender or racial discrimination,
"[s]upervisor liability cannot be based solely upon the doctrine
of respondeat superior, . . . there must be some affirmative
conduct by the supervisor that played a role in the
discrimination." Andrews, 895 F.2d at 1478 (citing Rizzo v.
Goode, 423 U.S. 362, 377 (1976).  The supervisor's affirmative
conduct can be shown either "'through allegations of personal
direction or of actual knowledge and acquiescence,' . . . "or
through proof of direct discrimination by the supervisor," both
of which "must be plead and proven with appropriate specificity."
Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.
1988).

After a review of the Complaint and Plaintiff's deposition
testimony, Plaintiff's only allegations within the statute of

limitations period with regard to Individual Defendant Palmer are
that he (1) gave her different assignments from what he gave
white males in the field, (2) gave her negative performance
evaluations, and (3) and failed to promptly remove a desk etched
with a racial slur.

Other than her allegations and testimony during her
deposition, Plaintiff does not present any evidence to create a
genuine issue of material fact as to whether she was treated
differently from her male colleagues.  See Chambers ex rel.
Chambers v. Sch. Dist. Of Phil. Bd. Of Educ., 587 F.3d 176, 197
(3d Cir. 2009) ("Conclusory statements [and] general denials ...
[are] insufficient to avoid summary judgment.").  Furthermore, an
"obvious explanation" exists for her receipt of different
assignments--Plaintiff was not similarly situated to her white
male colleagues, as they were out in the field and she was in the
office.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951-52 (2009)
("As between that 'obvious alternative explanation' for the
arrests [of Arab Muslims with a suspected link to Al Qaeda], and
the purposeful, invidious discrimination respondent asks us to
infer, discrimination is not a plausible conclusion") (internal
citation removed).

Plaintiff has also failed to present any evidence, other
than her allegations, that her race or gender accounted for the
negative performance evaluations from Individual Defendant

18

Palmer, and Palmer has denied Plaintiff's allegations.  The fact that she is an African-American woman who received negative reviews does not automatically mean that her supervisor gave her those reviews because of her race and gender.

With regard to the racial epithet etched on Plaintiff's desk, there is no evidence on record to suggest Individual Defendant Palmer was responsible for the slur.  Furthermore, the desk was replaced when Plaintiff returned to work.   Thus, summary judgment must be granted in favor of Individual Defendant Palmer.

As to Plaintiff's claims against Individual Defendant Mullowney, Plaintiff alleges that in 2005 while he was supervisor of the 73 Median closure project, Defendant Mullowney was unsupportive of Plaintiff's complaint that a president of a contractor company toucher her.  According to Plaintiff, Defendant Mullowney also permitted employees he supervised to discriminate against her.  These allegations, which have been denied and are completely unsupported by Plaintiff, cannot survive summary judgment.  Accordingly, summary judgment must be granted in favor of Individual Defendant Mullowney.

### 3. 42 U.S.C. § 1985 and 1986 Claims

Plaintiff alleges that Individual Defendants violated § 1985 and § 1986 by conspiring with one another to deprive her of her constitutional and civil rights.  As we noted previously,

Plaintiff's § 1983 claims are time-barred as to all individual Defendant except Defendants Palmer and Mullowney.

To state a claim under 42 U.S.C. § 1985, a plaintiff must show: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).

Here, Plaintiff has only presented mere allegations and has failed to identify specific facts creating a genuine issue of material fact as to the existence of a conspiracy.  There is no evidence that demonstrates an agreement and concerted action among Defendants to discriminate against Plaintiff personally, or as a member of a protected class.  Accordingly, Plaintiff's conclusory allegations of conspiracy without any factual support are not sufficient to survive summary judgment.

"Title 42 U.S.C. § 1986 creates a right to recover damages 'in an action on the case' brought within one year after the cause of action has accrued against every person who has knowledge of, and power to prevent, a § 1985 conspiracy, but neglects or refuses to act." Burnett v. Grattan, 468 U.S. 42, 45

20

n.5, (1984).  The failure to establish any right to relief under

42 U.S.C. § 1985 justifies the dismissal of the dependent cause

of action under 42 U.S.C. § 1986.  Rogin v. Bensalem Tp., 616

F.2d 680, 696 (3d Cir. 1980)).  Accordingly, the Court will grant

summary judgment in favor of remaining Defendants as to

Plaintiff's 42 U.S.C. § 1985 and 1986 claims.

### D. Plaintiff's New Jersey and United States Constitution Claims

Plaintiff alleges in Counts III and IV of her Complaint that

the Individual Defendants violated her rights under the New

Jersey and United States Constitutions.  Plaintiff alleges

violations of her Due Process, Equal Protection and Denial of

Rights-Discrimination under the New Jersey Constitution and

First, Fifth and Fourteenth Amendment rights under the federal

constitution.  The New Jersey Civil Rights Act("NJCRA") was

modeled after 42 U.S.C. § 1983, and creates a private cause of

action for violations of civil rights secured under the New

Jersey Constitution.  Slinger v. New Jersey, No. 07-5561, 2008 WL

4126181, * 5-6 (D.N.J. September 4, 2008), rev'd on other grounds

366 Fed. Appx. 357 (3d Cir. 2010); Armstrong v. Sherman, No. 09-

716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010).  NJCRA provides,

in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive
> due process or equal protection rights, privileges or
> immunities secured by the Constitution or laws of the
> United States, or any substantive rights, privileges or
> immunities secured by the Constitution or laws of this

> State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been
> interfered with or attempted to be interfered with, by
> threats, intimidation or coercion by a person acting
> under color of law.

N.J.S.A. 10:6-2(c).  This district has repeatedly interpreted
NJCRA analogously to § 1983.  <u>See</u> <u>Chapman v. New Jersey</u>, No. 08-
4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009); <u>Slinger</u>, 2008
WL at *5 (noting NJCRA's legislative history, this district
utilized existing § 1983 jurisprudence as guidance for
interpreting the statute); <u>Armstrong,</u> 2010 WL at *5 ("the New
Jersey Civil Rights Act is a kind of analog to section 1983").

Plaintiff's federal and state constitutional claims are
either redundant of her § 1983 claims and fail for the same
reasons, or are inapplicable.  <u>Rogin</u>, 616 F.2d at 686-87 ("it
would be a redundant and wasteful use of judicial resources" to
permit a direct Fourteenth Amendment constitutional claim and a §
1983 claim because "the latter wholly subsume[s] the former.") ;
<u>Hassoun v. Cimmino</u>, 126 F. Supp.2d 353, 364 (D.N.J. 2000) ("When
a Plaintiff states a claim under § 1983 and also alleges an
identical violation directly under the Fourteenth Amendment, the
direct constitutional claim should be dismissed"); <u>Good v. City
of Sunbury</u>, No. 06-2268, 2008 WL 339483 * 3 (M.D. Pa. Feb. 5,
2008) (explaining that the Fifth Amendment does not apply to
state action).

22

### E.    Plaintiff's Employment Termination Claim

Plaintiff alleges in Count VI that the Individual Defendants improperly discharged her in violation of N.J.S.A. 10:5-12. Defendants contend that Plaintiff was never terminated and remains an employee of NJDOT.  Plaintiff does not dispute that she is still employed by NJDOT.  Accordingly, the Court will grant summary judgment in favor of the Individual Defendants with regard to Plaintiff's improper termination claim.

### F.    Plaintiff's Intentional and Negligent infliction of Emotional Distress claims

In Counts VII and VIII, Plaintiff alleges that the Individual Defendants conduct has intentionally or negligently inflected emotional distress upon her.  Individual Defendants argue that Plaintiff failed to comply with the New Jersey Torts Claim Act.

The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., ("NJTCA") governs all claims arising out of alleged tortious conduct by a public entity or employee. N.J.S.A. 59:1-1.  This act provides that "[n]o action shall be brought against a public entity or a public employee . . . unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter." N.J.S.A. 59:8-3.  To comply with these procedures, a plaintiff must give the public entity a notice of the claims asserted "not later than the ninetieth day after accrual of the cause of action."  N.J.S.A.

23

59:8-8.  Failure to comply with the notice requirements results in dismissal of the claims.  <u>Warnett v. Corr. Med. Serv.</u>, No. 07-1291, 2008 WL 930739, * 6 (D.N.J. March 31, 2008).  Courts in this District have explicitly held that NJTCA's notice requirement applies to both intentional and negligent conduct.  <u>Id.</u> at 6-7; <u>Lowe v. Borough of Collingswood</u>, No. 07-3024, 2009 WL 448780, *4-5 (D.N.J. February 23, 2009).

Peter Ramos, Supervisor of Claims, State of New Jersey Department of the Treasury, Division of Risk Management submitted to this Court an affidavit certifying that Plaintiff did not file the requisite notice of claim with the New Jersey Department of Treasury, the agency responsible for the receipt of all claim notices against NJDOT.  (Doc. 85-13.)  Plaintiff does not offer any evidence to contradict this affidavit.  The Court must therefore grant summary judgment in favor of Individual Defendants on Plaintiff's intentional and negligent inflection of emotional distress claims because Plaintiff failed to comply with NJTCA pre-suit notification requirement.

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted.  An Order consistent with the Opinion will be entered.

Date: September 30, 2010            s/ Noel L. Hillman
                                    NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

24